UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EGBERTO DEJESUS-VASQUEZ,

                      Plaintiff,

           v.

RAMON BETHENCOURT, JR., *et al.*,

                      Defendants.

No. 19-CV-967 (KMK)

OPINION & ORDER

Appearances:

Egberto DeJesus-Vasquez
White Deer, PA
*Pro se Plaintiff*

Alex J. Smith, Esq.
Corporation Counsel of the City of Middletown
Middletown, NY
*Counsel for Defendants Ramon Bethencourt, Jr., J. Miguel Rodrigues, Shawn Sullivan, Deborah Mills, and Gene T. Vignola*

Karen D. Edelman-Reyes, Esq.
New York County District Attorney's Office
New York, NY
*Counsel for Defendants David M. Hoovler and Robert H. Middlemiss*

KENNETH M. KARAS, United States District Judge:

    Egberto DeJesus-Vasquez ("Plaintiff"), currently incarcerated at Allenwood Low Federal Correctional Institution ("Allenwood"), brings this pro se Action, pursuant to 42 U.S.C. § 1983, against Chief of Police Ramon Bethencourt, Jr. ("Bethencourt"), Orange County Commissioner Gene T. Vignola ("Vignola"), Orange County Commissioner Shawn Sullivan ("Sullivan"), Orange County Commissioner Deborah Mills ("Mills"), Orange County Commissioner J. Miguel Rodrigues ("Rodrigues" and collectively, "Middletown Defendants"), Orange County District Attorney ("DA") David M. Hoovler ("Hoovler"), Assistant DA Robert H. Middlemiss

("Middlemiss" and collectively, "DA Defendants"), Ryan Neijer ("Neijer"), and John Does #1-2 of Hollywood Towing and Recovery (collectively, "Hollywood Defendants" and, with Middletown Defendants and DA Defendants, "Defendants").  Plaintiff alleges that Defendants violated his Fourteenth Amendment Due Process rights by not returning his confiscated property as purportedly agreed upon pursuant to a state criminal plea agreement and depriving him of said property.  (*See* Compl. (Dkt. No. 2).)  Middletown Defendants and DA Defendants each filed a Motion To Dismiss Plaintiff's Complaint pursuant to Federal Rule of Procedure 12(b)(6) (collectively, the "Motions").  (Not. of Middletown Defs.' Mot.; Not. of DA Defs.' Mot. (Dkt. Nos. 27, 32).)  For the following reasons, the Motions are granted.

I.  Background

A.  Factual Background

The following facts are taken from Plaintiff's Complaint, and are assumed true for purposes of resolving the instant Motions.

On November 15, 2016, Plaintiff was arrested by officers of the City of Middletown Police Department ("CMPD") in the town of Wallkill, New York ("Wallkill").  (Compl. ¶ 22.)  At the time of his arrest, Plaintiff was driving a 1989 Honda Civic, which was registered to and owned by Plaintiff.  (*Id*.)  Immediately following Plaintiff's arrest, the Honda Civic was driven to Columbia Self Storage Unit in Wallkill.  (*Id*.)  Also on November 15, 2016, Cheryl M. Hayes ("Hayes"), apparently an associate of Plaintiff's, was arrested by officers of the CMPD in Beacon, New York ("Beacon"), while driving a 2006 Honda Accord registered to and owned by Plaintiff.  (*Id*. ¶ 23.)  The Honda Accord was also driven to Columbia Self Storage Unit by a CMPD officer.  (*Id*.)  The CMPD officers executed a search warrant at Columbia Self Storage Unit, where a third vehicle was recovered, a 1992 Toyota Camry registered to and owned by

Plaintiff. (*Id.* ¶ 22.) Plaintiff and Hayes were taken into custody, and all three vehicles were seized by CMPD. (*Id.* ¶¶ 25–26.) Plaintiff alleges that he was "led to believe" that the vehicles would stay in CMPD's custody in a "safe and secure impound." (*Id.*) Pursuant to the arrest, some personal property was also allegedly taken from Plaintiff and Hayes. (*Id.* ¶ 27.)

On July 26, 2017, Plaintiff pled guilty to a narcotics-related offense in full satisfaction of the charges resulting from his November 15, 2016 arrest. (*Id.* ¶¶ 28, 33.) As a part of the plea agreement, CMPD allegedly agreed to return Plaintiff's personal property which was seized at the time of his arrest. (*Id.* ¶ 28.) Because Plaintiff remained incarcerated in connection with a separate, federal criminal charge, on June 23, 2017, Plaintiff designated Hayes as his proxy to recover his property. (*Id.* ¶¶ 31–32.) On August 17, 2017, Hayes retrieved some of the property from the CMPD, namely a black folder with paperwork, a black case, a black and red bag, two watches, a necklace, three rings, two cuff links, and two cellphones. (*Id.* ¶ 35.) Plaintiff claims that the black case had originally contained his passport, but it was "listed as being empty." (*Id.*) By Plaintiff's account, the property that was not returned consisted of Plaintiff's three vehicles, three additional cellphones, and Plaintiff's passport. (*Id.*)

On September 18, 2017, Plaintiff wrote a letter to the Orange County DA, Hoovler, asking for guidance on how to obtain the missing property. (*Id.* ¶ 36.) On November 28, 2017, Plaintiff's attorney in his federal criminal case wrote to Hoovler as well, asking that Plaintiff's car be released to Hayes because Plaintiff was still imprisoned on a federal criminal sentence. (*Id.* ¶ 37.) Plaintiff does not allege that Hoovler responded to either of these letters. On March 19, 2018, Plaintiff filed a "Motion for Return of Property" in Orange County Court. (*Id.* ¶ 38.) On June 1, 2018, Assistant DA Middlemiss responded to Plaintiff's motion indicating that all of Plaintiff's property had been returned to Hayes with the exception of the vehicles, two of which

3

were being held at Hollywood Towing and Recovery in Middletown. (*Id*. ¶ 39.) Middlemiss indicated that these two vehicles were available to be picked up, following the payment of some potential fees, but that the location of the third vehicle was unknown. (*Id*.) On June 22, 2018, Plaintiff replied to Middlemiss's response. (*Id*. ¶ 41.)

In the meantime, Plaintiff sent Hayes to Hollywood Towing and Recovery, but when Hayes arrived, the two vehicles were allegedly "inoperable." (*Id*. ¶¶ 41, 42.) Hayes was also allegedly informed that a fee of "between $3,000.00 and $4,000.00" was due on each vehicle before they could be released. (*Id*. ¶ 42.) However, Plaintiff avers that when Hayes returned to "make arrangements" — presumably to pay the fees — she was told that the two vehicles were sold at auction. (*Id*.)

On October 11, 2018, the Orange County Court rendered a Decision & Order granting Plaintiff's motion for return of property with respect to Plaintiff's three cell phones and passport to the extent that they were still in possession of the CMPD, but denying the motion with respect to the three motor vehicles, as the CMPD denied possession of the vehicles. (*Id*. ¶ 44; *see also* Decl. of Karen Edelman-Reyes, Esq. in Supp. of DA Defs.' Mot. ("Edelman-Reyes Decl.") Ex. K ("County Court Decision & Order") (Dkt. No. 33-11).) Plaintiff avers that "[n]either the personal property, nor the vehicles have been returned to Plaintiff to date." (Compl. ¶ 46.)

Plaintiff claims that Defendants have "violated [his] Due Process rights by not returning his property as agreed upon, by negligence, by not affording Plaintiff any procedural safeguards at all, by failing to provide Plaintiff with notice of any kind, by failing to provide Plaintiff with any hearing, and by depriving Plaintiff of his property . . . ." (*Id*. ¶ 47.) Plaintiff further claims that "[t]he manner in which the Government failed to honor its [a]greement with Plaintiff and the manner in which its Officers and the Towing Company handled their custodial duties of

4

Plaintiff's property constituted cruel and unusual punishment." (*Id.* ¶ 48.) Plaintiff seeks monetary damages to compensate for lost property, mental suffering and psychological harm, and punitive damages. (*Id.* ¶ 50.)

B. Procedural Background

Plaintiff commenced the instant Action on January 31, 2019. (*See* Compl.) Plaintiff's request to proceed in forma pauperis ("IFP") was granted on April 4, 2019. (*See* Dkt. No. 6.)

On April 23, 2019, the Court dismissed Plaintiff's claims against Defendants CMPD Officers Andrew J. Rosen, J. McHugh, DeYoung, Artola, Beaudette, and Ido Gallagher without prejudice to Plaintiff's repleading these claims, pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii), which permits the Court to dismiss the case "at any time" with regard to any claim seeking monetary relief against a defendant who is immune from such relief. (*See* Order of Service (Dkt. No. 8).) Plaintiff has not amended his claims against these Defendants.

On June 28, 2019, DA Defendants filed a Pre-Motion Letter. (Dkt. No. 17.) On July 23, 2019, Middletown Defendants filed their own Pre-Motion Letter. (Dkt. No. 25.) Plaintiff did not respond to either letter. The Court issued Memo Endorsements on each of the Letters setting briefing schedules, obviating the need for a pre-motion conference. (Dkt. Nos. 19, 26.)

Middletown Defendants and DA Defendants filed their Motions and supporting papers on August 19, 2019 and September 5, 2019, respectively. (Not. of Middletown Defs.' Mot.; Not. of DA Defs.' Mot.; *see also* Decl. of Alex Smith, Esq. in Supp. of Middletown Defs.' Mot. ("Smith Decl."); Mem. of Law in Supp. of Middletown Defs.' Mot. ("Middletown Defs.' Mem."); Edelman-Reyes Decl.; Mem. of Law in Supp. of DA Defs.' Mot. ("DA Defs.' Mem.") (Dkt. Nos. 29–30, 33–34).) Plaintiff filed his Opposition on December 5, 2019. (Pl.'s Mem. in Opp'n to Mots. ("Pl.'s Mem.") (Dkt. No. 44).) DA Defendants filed a Reply on December 26, 2019, and

Middletown Defendants filed a Reply on December 30, 3019. (Reply Aff'n of Karen Edelman-Reyes, Esq. in Supp. of DA Defs.' Mot. ("DA Defs.' Reply"); Reply Aff'n of Alex Smith, Esq. in Supp. of Middletown Defs.' Mot. ("Middletown Defs.' Reply") (Dkt. Nos. 47, 49).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

6

'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motions, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the

complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

B.  Analysis

1.  Personal Involvement of Middletown Defendants

Middletown Defendants argue that all Middletown Defendants should be dismissed for lack of personal involvement. (*See generally* Middletown Defs.' Mem.) "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citation omitted). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citation, italics, and quotation marks omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*,

8

556 U.S. at 676. Therefore, a plaintiff must plausibly allege that a defendant's actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Here, as Middletown Defendants point out, the Complaint contains no factual allegations to plausibly suggest their involvement in any purported constitutional violation. Plaintiff alleges that he initially believed that his property was under the safekeeping of the CMPD. (*See* Compl. ¶ 41.) However, Plaintiff does not allege whether or how any of the individual Middletown Defendants was involved in the safekeeping of his property. Indeed, the individual Middletown Defendants' names do not appear within the body of Plaintiff's Complaint at all, which in and of itself constitutes grounds for dismissal for lack of personal involvement. *See King v. Falco*, No. 16-CV-6315, 2018 WL 6510809, at *6–7 (S.D.N.Y. Dec. 11, 2018) (holding personal involvement not shown where the "plaintiff includes [the defendant's] name in the case caption but fails to make any substantive allegations against her in the body of the complaint"); *see also Mercedes v. Westchester County*, No. 18-CV-4087, 2019 WL 1429566, at *5 (S.D.N.Y. Mar. 29, 2019) (same) (collecting cases); *Quick v. Westchester County*, No. 18-CV-243, 2019 WL 1083784, at *4 (S.D.N.Y. Mar. 7, 2019) (same).

Moreover, no Middletown Defendant may be held liable under a supervisory liability theory. Bethencourt is alleged to be the Chief of Police at the CMPD, while Rodrigues, Vignola, Sullivan, and Mills are alleged to be Orange County police commissioners. (Compl. ¶¶ 2, 4–7.) However, holding a position of authority does not automatically open up a supervisor to § 1983 liability where the supervisor is not alleged to have participated in any of the underlying activity at all. *See Reyes v. City of New York*, 992 F. Supp. 2d 290, 299–300 (S.D.N.Y. 2014) ("A

9

defendant in a § 1983 action may not be liable merely because he holds a high position of authority." (citation omitted)); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (citation and quotation marks omitted).) As Plaintiff has failed to allege any Middletown Defendant's personal involvement in the purported constitutional violations, the Court dismisses Plaintiff's § 1983 claims against them.

### 2. DA Defendants

DA Defendants argue that any claims against them in their official capacities are barred by the Eleventh Amendment; that they are protected by absolute prosecutorial immunity in their individual capacities; that the Complaint fails to state a claim under 42 U.S.C. § 1983 in that it does not plausibly allege personal involvement of any DA Defendant and does not state a procedural due process or cruel and unusual punishment claim; that the Complaint fails to comply with General Municipal Law as to any state claims, which are time-barred anyway; and that DA defendants are entitled to qualified immunity.[1] (*See generally* DA Defs.' Mem.) The Court discusses each of these arguments to the extent necessary.

#### a. Eleventh Amendment Immunity

Insofar as Plaintiff seeks to hold Hoovler and Middlemiss liable in their official capacities, such a claim is barred by the Eleventh Amendment. "When prosecuting a criminal

---

[1] DA Defendants argue that they are entitled to qualified immunity, but this "argument" merely restates the qualified immunity case law without meaningfully applying that case law to the facts of this case. (*See* DA Defs.' Mem. 17–18.) "Accordingly, the Court declines to consider at this time whether [DA] Defendants are protected by qualified immunity." *See Johnson v. Doty*, No. 15-CV-7823, 2019 WL 2137361, at *3 n.4 (S.D.N.Y. Mar 16, 2019) (collecting cases).

10

matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988); *see also Scalpi v. Town of E. Fishkill*, No. 14-CV-2126, 2016 WL 858955, at *9 (S.D.N.Y. Feb. 29, 2016) (applying Eleventh Amendment immunity to Dutchess County prosecutors). "The Eleventh Amendment bars suits for damages against states, state agencies[,] and state officials acting in their official capacity, absent the state's consent to suit or an express or statutory waiver of immunity." *Hensler v. N.Y. State Dep't of Envtl. Conservation*, No. 16-CV-3445, 2017 WL 2589311, at *3 (E.D.N.Y. June 14, 2017) (citations omitted). New York State has not waived its sovereign immunity in § 1983 suits. *See Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 335 (E.D.N.Y. 2014) ("It is well settled that Congress did not abrogate the States' sovereign immunity by enacting § 1983 and New York has not waived its immunity." (citation omitted)); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) (same).

Hoovler is alleged to be the DA of Orange County, (Compl. ¶ 3), and Middlemiss is alleged to be an Assistant DA, (*id.* ¶ 8). Plaintiff's allegations pertain to activities that "clearly stem from . . . prosecutorial duties," *Scalpi*, 2016 WL 858955, at *9, as Plaintiff alleges that Middlemiss responded to Plaintiff's state court motion for return of property confiscated pursuant to the plea agreement in his state criminal case, (*see* Compl. ¶¶ 33, 39).[2] Accordingly,

---

[2] As for Hoovler, Plaintiff alleges almost no involvement at all. Plaintiff's sole allegation as to Hoovler is that Plaintiff and his attorney for his federal criminal case sent letters to him inquiring about the status of the confiscated property. (*See* Compl. ¶¶ 36–37.) However, Middlemiss, not Hoovler, is alleged to have responded to the subsequent motion, and Plaintiff does not claim that Hoovler ever responded to his or his attorney's earlier letters. (*See id.* ¶ 39.) Plaintiff does not allege that Hoovler was involved in the plea negotiations in his state criminal case or even that Hoovler was aware of the existence of the confiscated property. As discussed above, a supervisor "cannot be held liable . . . under § 1983 merely because he held a high position of authority." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (citation and quotation marks omitted). As Hoovler is not alleged to have

Plaintiff's claims against DA Defendants in their official capacities are barred by the Eleventh Amendment. *See Brims v. Ramapo Police Dep't*, No. 11-CV-712, 2011 WL 7101233, at *7 (S.D.N.Y. Dec. 23, 2011) ("[A]bsent any indication that the State or the [DA's] Office has waived its rights under the Eleventh Amendment—and there is no evidence that it has—the Eleventh Amendment bars [the] plaintiff's claims against [an assistant DA] in his official capacity."); *Eisenberg v. Dist. Attorney of Cty. of Kings*, 847 F. Supp. 1029, 1035 (E.D.N.Y. 1994) ("[T]o the extent that [the plaintiff] has asserted claims against the [DA] in his official capacity, the claims against the [DA] are construed as claims against the state and must be dismissed as barred by the Eleventh Amendment." (citation and footnote omitted)).

b. Prosecutorial Immunity

DA Defendants are also entitled to absolute prosecutorial immunity in their individual capacities. Prosecutors are immune from civil suits for damages for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are "intimately associated with the judicial phase of the criminal process." *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (holding that absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it" (citations and quotation marks removed)). Absolute prosecutorial immunity covers acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009). "[A] state prosecuting attorney who acted within the scope of his [or her]

---

participated in facilitating any of Plaintiff's purported deprivations, he can also be dismissed on personal involvement grounds.

12

duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citations, italics, and quotations marks omitted); *Bowers v. Kelly*, No. 13-CV-6265, 2015 WL 2061582, at *5 (S.D.N.Y. May 4, 2015) (same).

Plaintiff's § 1983 claims against DA Defendants rely on his allegations that the "Government failed to honor its [plea a]greement with Plaintiff," which he construes as a violation of his Fourteenth Amendment Due Process rights as well as a breach of contract and "cruel and unusual punishment."[3] (Compl. ¶¶ 47–48.) The only action on behalf of DA Defendants that is alleged to form the basis for such a claim is Middlemiss's participation in motion practice regarding Plaintiff's motion for return of his confiscated property. (*See id.* ¶ 39.) Plaintiff does not allege that Middlemiss personally withheld or destroyed his personal property or ordered its withholding or destruction. (*See id.*) In responding to Plaintiff's motion and attempting to execute the plea agreement, Middlemiss was acting in the scope of his official prosecutorial duties as an Assistant DA. *See Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995) (holding that prosecutorial immunity applies to, inter alia, claims of misrepresentations in prompting a plea agreement or breaching a plea agreement); *see also Christensen v. Gadanski*, No. 19-CV-1927, 2020 WL 509693, at *1–2 (D. Conn. Jan. 31, 2020)

---

[3] The Court further notes that Plaintiff cannot recover monetary damages for breach of a plea agreement in a civil lawsuit. "It is . . . well settled that, when the government breaches a plea agreement, a defendant's remedy is either specific performance of the plea agreement or an opportunity to withdraw his guilty plea." *United States v. Alexander*, 869 F.2d 91, 94 (2d Cir. 1989) (citing *Santobello v. New York*, 404 U.S. 257, 262–63 (1971)); *see also 1-95-CV-553-P1 v. 1-95-CV-553-D1*, 75 F.3d 135, 136 (2d Cir. 1996) ("[T]he only remedies available for breach of a plea agreement are enforcement of the agreement or affording the defendant an opportunity to withdraw the plea.")

(holding that prosecutorial immunity applied where the plaintiff complained that he was not receiving the type of medical treatment in prison that was "contemplated under the plea agreement"); *Deraffele v. City of New Rochelle*, No. 15-CV-282, 2016 WL 1274590, at *12 (S.D.N.Y. Mar. 30, 2016) (noting that motion practice is one function that is protected by absolute prosecutorial immunity). Therefore, DA Defendants are entitled to absolute prosecutorial immunity in their individual capacities, and Plaintiff's § 1983 claims against them are dismissed.[4]

### 3. State Law Claims

To the extent Plaintiff seeks to bring state law claims, those claims fail for failure to file a notice of claim. Under New York law, "as a condition precedent to bringing a claim against a municipality, a plaintiff must file a notice of claim within 90 days after her claim accrues." *Russell v. Westchester Cmty. Coll.*, No. 16-CV-1712, 2017 WL 4326545, at *5 (S.D.N.Y. Sept. 27, 2017) (citing NY Gen. Mun. Law § 50-e(1)(a)); *see also* N.Y. Gen. Mun. Law § 50-k(6) ("No action . . . shall be prosecuted or maintained against the city . . . or an employee . . . unless notice of claim shall have been made and served upon the city . . . ."); *Olsen v. County of Nassau*, No. 05-CV-3623, 2008 WL 4838705, at *1 (E.D.N.Y. Nov. 4, 2008) ("As a 'condition precedent' to commencing a tort action against New York municipalities, or any of their officers, agents, or employees, New York General Municipal Law § 50-e requires plaintiffs to file a notice of claim within ninety days after the claim arises." (citation omitted)). Moreover, "in a federal court, state notice-of-claim statutes apply to state-law claims." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citations and emphasis omitted). "Federal courts

---

[4] Because Plaintiff's claims against DA Defendants may be dismissed on immunity grounds, the Court does not address DA Defendants' arguments on the merits of Plaintiff's § 1983 claims. (*See* DA Defs.' Mem. 10–16.)

14

do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice." *Gibson v. Comm'r of Mental Health*, No. 04-CV-4350, 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006) (footnote omitted). Further, "the burden is on [the p]laintiff to demonstrate compliance with the notice of claim requirements." *Peritz v. Nassau Cty. Bd. of Coop. Educ. Servs.*, No. 16-CV-5478, 2019 WL 2410816, at *4 (E.D.N.Y. June 7, 2019) (citations omitted); *see also Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390 (E.D.N.Y. 2013) ("To survive a motion to dismiss, a plaintiff must affirmatively plead that a notice of claim was filed." (citing, inter alia, N.Y. Gen. Mun. Law § 50-i(1)(b))). "The notice of claim requirements are strictly construed, and a plaintiff's 'failure to comply with the mandatory New York statutory notice-of-claim requirements generally results in dismissal of his claims.'" *Smith v. City of New York*, No. 04-CV-3286, 2010 WL 3397683, at *15 (S.D.N.Y. Aug. 27, 2010) (citation omitted), *aff'd sub nom. Smith v. Tobon*, 529 F. App'x 36 (2d Cir. 2013).

Because Plaintiff failed to affirmatively plead that he filed a notice of claim with respect to any state law claims, those claims are dismissed. *See El v. City of New York*, No. 14-CV-9055, 2015 WL 1873099, at *8 (S.D.N.Y. Apr. 23, 2015) ("Absent a showing of such a notice of claim, the complaint may be dismissed for failure to state a cause of action." (citation and quotation marks omitted)); *Naples*, 972 F. Supp. 2d at 390 (dismissing state law claims against municipality where "the [a]mended [c]omplaint is void of any allegation that a notice of claim was filed prior to the commencement of [the] action").[5]

---

[5] Because the Court dismisses any state claims on notice-of-claim grounds, the Court does not consider DA Defendants' argument on the statute of limitations at this time. (*See* DA Defs.' Mem. 16–17.)

### 4. Hollywood Defendants

Neither Neijer nor the John Doe Defendants connected to Hollywood Towing and Recovery have been served in this Action. (*See generally* Dkt.) However, this Court has the inherent authority to sua sponte dismiss frivolous claims, even in pro se cases. *See Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) (affirming district court's sua sponte dismissal of a pro se § 1983 claim where some of the defendants were not plausibly alleged to have been state actors); *see also Peterec-Tollino v. New York*, 364 F. App'x 708, 711 (2d Cir. 2010) (noting that a district court should not "abuse its discretion in dismissing" a pro se case sua sponte, but ultimately summarily affirming dismissal where "amendment would be futile because [the plaintiff] simply cannot sue the defendants in federal court for the federal claims . . . , and has not alleged or suggested that he could allege any other facts that would establish that he suffered a wrong that could be remedied in federal district court" (citation omitted)).

As to Hollywood Defendants, Plaintiff alleges only that they informed Hayes that fees were due to be paid on each vehicle before they could be released and that, before Hayes could return with the fees, the vehicles had been "sold at auction." (Compl. ¶ 42.) Although Plaintiff alleges that Middlemiss stated that two of Plaintiff's vehicles could be found at Hollywood Towing and Recovery, (*id.* ¶ 39), there is no indication that Hollywood Defendants can be considered state actors. Section 1983 only "provides a cause of action against any person who deprives an individual of federal guaranteed rights 'under color' of state law." *Filarksy v. Delia*, 566 U.S. 377, 383 (2012) (citation omitted). "With respect to [Hollywood Defendants], Plaintiff fails to offer any factual assertions from which it could be inferred that [Hollywood Defendants were] state actors or that there was any nexus between [Hollywood Defendants] and the state." *Deem v. Dimella-Deem*, No. 18-CV-11889, 2019 WL 1958107, at *8 (S.D.N.Y. May 2, 2019)

(citations omitted); *see also Saunders v. Bonstrom*, No. 05-CV-7350, 2006 WL 3690660, at *2 (S.D.N.Y. Dec. 13, 2006) (dismissing claim against a defendant because he was not a state actor, meaning "he cannot be sued under 42 U.S.C. § 1983" (citation omitted)). Accordingly, Hollywood Defendants are also dismissed from this case.

### III. Conclusion

For the reasons stated above, Middletown Defendants' and DA Defendants' Motions To Dismiss are granted, and the Court sua sponte dismisses claims against Hollywood Defendants. Because this is the first adjudication of Plaintiff's claims, the dismissals are without prejudice. Plaintiff may file an amended complaint with the Court within 30 days of the date of this Opinion & Order. Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion & Order that Plaintiff wishes the Court to consider. Plaintiff is further advised that the amended complaint will completely replace, not supplement, the instant Complaint. The amended complaint must contain *all* of the claims, defendants, and factual allegations that Plaintiffs wish the Court to consider. If Plaintiff fails to timely file an amended complaint, the claims may be dismissed with prejudice.

The Clerk is respectfully directed to terminate the pending Motions, (*see* Dkt. Nos. 27, 32), and to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

Dated: March 4, 2020
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE